UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERIK A. MUNCK,

      Petitioner,

 v.
                9:16-CV-0118 (GLS)

SANDRA AMOIA,

      Respondent.
_____

APPEARANCES:

ERIK A. MUNCK
Petitioner, pro se
228 Hastings Avenue
Endwell, NY 13760

HON. ERIC T. SCHNEIDERMAN    PAUL B. LYONS, AAG
Attorney for Respondent
Office of the Attorney General
120 Broadway
New York, New York 10271

GARY L. SHARPE
Senior United States District Judge

# DECISION AND ORDER

## I. INTRODUCTION

  Petitioner Erik A. Munck filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Exhibits.[1] Respondent opposes the petition. Dkt. No. 10, Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."); Dkt. No. 11, Answer; Dkt. No. 12-1, State Court Record ("SR").

---

[1] The cited page numbers for petitioner's papers refer to those generated by the Court's electronic filing system ("ECF").

For the reasons that follow, the petition is denied and dismissed.[2]

## II. RELEVANT BACKGROUND

On January 10, 2014, petitioner waived his right to be indicted by a grand jury and consented to being prosecuted by a Superior Court Information ("SCI") charging him with second degree assault. Dkt. No. 12-1 at SR 1, Superior Court Information; 2-3, Waiver of Indictment; SR 4-7, SCI Arr./Plea Transcript. The charges arose after petitioner threw hot coffee at Duke Davis, causing second-degree burns to Davis's face. R. Mem. at 1; Dkt. No. 12-1 at SR 1. Petitioner was arraigned on the SCI the same day, and entered into a negotiated plea agreement. Dkt. No. 12-1 at SR 7-8.

Under the terms of the agreement, petitioner agreed to plead guilty to a reduced charge of attempted second degree assault in exchange for an indeterminate sentence of 2 to 4 years in prison. Dkt. No. 12-1 at SR 7-8. Petitioner confirmed that he had all the time he needed to speak with counsel about the case. *Id.* at SR 8. He acknowledged by pleading guilty, he was giving up the right to a jury trial, at which he could confront and cross-examine the People's witnesses, the right to testify and call witnesses on his own behalf, and that he was giving up any defense he may have to the charges. *Id.* He understood that a guilty plea had the same legal effect as if a jury convicted him after a trial. *Id.* at SR 9.

---

[2] According to publicly available records maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), petitioner was conditionally released from state custody to parole supervision on February 23, 2016. *See* http://nysdocslookup.docs.state.ny.us (last visited Aug. 12, 2016). His sentence will expire in 2019. *See id.* Petitioner was in custody when he filed his petition, and remains "in custody" under his unexpired sentence. *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968); *see Jones v. Cunningham*, 371 U.S. 236, 241-43 (1963) (finding petitioner released on condition of parole was, for habeas purposes, "in custody" under his unexpired sentence). The petition is not mooted by petitioner's release because a challenge to an underlying conviction carries the presumption that a collateral, adverse consequences exists. *Spencer v. Kemna*, 523 U.S. 1, 12 (1998) ("[I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.' ") (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968)).

Petitioner confirmed that no one promised him anything other than the sentence that would be imposed if he pleaded guilty, no one threatened or forced him to enter his plea, and he was doing so freely and voluntarily after conferring with his attorney. Dkt. No. 12-1 at SR 9.

Petitioner then described in his own words how on June 25, 2013, at the Volunteers of America shelter in Binghamton, New York, he got into a verbal argument with Duke Davis. Dkt. No. 12-1 at SR 10-11. He stated he "reacted wrong to it" and "threw the cup of coffee" at Davis's face. *Id.* at SR 11-12. Davis suffered first and second degree burns. *Id.* at SR 12. Petitioner admitted he intended to burn Davis. *Id.* at SR 13. The court accepted his plea. *Id.*

Petitioner also admitted that on September 29, 1999, he was convicted of attempted first degree burglary and other, related charges, and that he was incarcerated in a New York correctional facility from November 16, 1999 to May 21, 2009, from February 18, 2010 to July 5, 2011, and from September 14, 2011 to May 3, 2013. Dkt. No. 12-1 at SR 13-15. The court ruled petitioner was a second felony offender. *Id.* at SR 15.

On March 14, 2014, petitioner was sentenced as promised, with the sentence to run consecutively to any sentence he was serving as a result of violating his parole. Dkt. No. 12-1 at SR 20-21.

Petitioner filed a notice of appeal, but on July 31, 2014, he sent a letter to the Appellate Division in which he asked to withdraw the appeal because he had no "direct appeal issues to raise." Dkt. No. 12-1 at 23, Letter from petitioner to Clerk Robert D. Mayberger, Jul. 31, 2014. On August 7, 2014, the Appellate Division acknowledged petitioner's letter. *Id.* at SR 24, Letter to Petitioner from Joseph C. Rotello, Principal Appellate Court Attorney, Aug. 7, 2014.

3

On August 26, 2014, petitioner moved to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") §440.10. Dkt. No. 12-1 at SR 25, Notice of Motion to Vacate Judgment; SR 26, Affidavit; SR 27, Memorandum of Law; SR 29-45, Exhibits. He argued that his plea was invalid because he suffered from a "mental disease or defect" and as a result was "incapable of understanding or participating in" the plea proceedings. Dkt. No. 12-1 at SR 26. Petitioner explained that he was diagnosed with bipolar disorder in 2004, and although he first exhibited symptoms of his illness in 1977, it was left untreated. Dkt. No. 12-1 at SR 27. Petitioner claimed that since 2004, he was prescribed several medications to manage symptoms that included "poor judgment, impulsivity, insomnia, fatigue, drowsiness, dizziness, diminished ability to think or concentrate," depression, and "suicidal thoughts." *Id.* Petitioner asked the court to "conduct an inquiry into his mental health history" and asked either that his plea be vacated or replaced "with not guilty by reason of mental illness or defect[.]" *Id.* Petitioner also moved for a refund of a $50.00 DNA surcharge fee. Dkt. No. 12-1 at SR 43-45, Affidavit in Support.

The People opposed petitioner's motions. Dkt. No. 12-1 at SR 46-48, People's Letter Response. Petitioner filed a reply in which he argued that the People's papers should be stricken because they were untimely filed. Dkt. No. 12-1 at SR 49-50, Motion to Strike, Objections in Point of Law. He also claimed he was on medication at the time of the incident, "he had just begun new medication" called Abilify that has "noted side effects," and he did not "have enough time for his body to adjust to this new medication." *Id.* at SR 50.

On July 27, 2015, the court denied petitioner's motion without a hearing. Dkt. No. 12-1 at SR 51-52, Decision and Order. The court noted that petitioner included "HIPPA releases, presumably for this Court to obtain a history of his medical and psychological

4

record," but noted that petitioner offered no "actual records in support of his application." *Id.* at SR 51. It concluded that it would be "inappropriate" for the court to "directly obtain records in support of" petitioner's application, and that although petitioner included excerpts from the Diagnostic and Statistical Manual of Mental Disorders (DSM) for Bipolar II Disorder, those excerpts were "of little assistance to the Court's determination." *Id.* The court also concluded that "the mere fact that a defendant has a history of mental disease or defect does not necessarily entitle him to a full hearing to develop his claim," and petitioner "merely offer[ed] the barest of allegations" that he "suffered from bipolar disorder." *Id.* at SR 52. The record reflected that petitioner "was actively involved in the plea process and intelligently responded" to the court's inquiries "concerning the facts surrounding" the crime. *Id.* The court further ruled that petitioner made no claim that he was "under the influence of any drug when he entered his guilty plea or that he was impaired in any way," and that he told the court he was freely and voluntarily pleading guilty. *Id.* Therefore, the court found, petitioner's claim that his plea was not knowingly, voluntarily and intelligent was "refuted by the record[.]" *Id.*

Finally, the court denied petitioner's motion for a refund of the DNA surcharge. Dkt. No. 12-1 at SR 52. It explained that Penal Law §60.35(1)(v) requires collection of the DNA surcharge when a defendant, like petitioner, is convicted of an offense designated in Executive Law §995(7). *Id.* The court concluded the fact petitioner may have "previously provided a DNA sample has no effect on whether the DNA surcharge is payable." *Id.*

Petitioner sought leave to appeal the court's decision, and on September 15, 2015, the Appellate Division denied his application. Dkt. No. 12-1 at SR 55-56, Application for

5

leave to Appeal Pursuant to C.P.L. §460.15; SR57-59, People's Opposition Letter; SR60, Order Denying Leave.

This action followed.

## III. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, U.S. , 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, U.S. , 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas

6

case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

The AEDPA also foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, U.S. , 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). The statute acts as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (internal quotation marks omitted). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with '"clear and convincing evidence."' *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, U.S. , 133 S. Ct. 1088, 1096 (2013).

**B.     Ground One**

Petitioner claims in Ground One of his petition, as he did in his CPL §440.10 motion,

that his guilty plea was unknowing, involuntary and unintelligent because he suffers from bipolar disorder and at the time of his plea was taking several medications, including Lamictal, Abilify, Celexa, and Benadryl, that "tend to impair his concentration and understanding." Pet. at 6. He further alleges that he has been taking various medications for his condition "for the past ten years[.]" *Id.* Finally, petitioner complains that the trial court accepted a late response to his motion from the People, and that relying on the People's response constituted a violation of due process. *Id.* For the reasons that follow, petitioner's claims are denied and dismissed.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences.") (internal quotation marks and citation omitted). For a plea to be voluntary, a defendant must be competent to proceed. *Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004). The federal standard for determining competency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).

While the "'governing standard as to whether a plea of guilty is voluntary for purposes

8

of the Federal Constitution is a question of federal law,' questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings under 28 U.S.C. §2254(d)." *Parke v. Raley*, 506 U.S. 20, 35 (1992) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983)). Statements made by a defendant during a plea colloquy constitute a "formidable barrier" that cannot be easily overcome in subsequent collateral proceedings because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In this case, the trial court rejected petitioner's challenge to the validity of his plea pursuant to CPL §440.30(4)(d), which provides that upon considering the merits of a §440.10 motion, the court may deny the motion without conducting a hearing if "[a]n allegation of fact essential to support the motion (i) is contradicted by a court record or other official court document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all other circumstances attending the case, there is no reasonable possibility that such allegation is true."[3] That decision, entitled to AEDPA deference, was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

First, as the trial court ruled, petitioner offered only the "barest of allegations, that he

---

[3] There appears to be a split of authority in the Second Circuit as to whether the denial of a motion pursuant to § 440.30(4)(d) is an "independent and adequate" state procedural bar or a merits based decision. *See, e.g., Ahmed v. Portuondo*, No. 1:99-CV-5093, 2002 WL 1765584 at *1-2 (E.D.N.Y. July 26, 2002) ("Where "trial court, on the CPL § 440 motion, ... relied on the adequate and independent state law ground that petitioner failed to support [his] claim with any evidence or sworn affidavits beyond his own," citing § 440.30(4)(d), petitioner's habeas claim is "subject to a procedural bar."); *see contra., Skinner v. Duncan*, No. 1:01-CV-6656, 2003 WL 21386032 at *28 (S.D.N.Y. June 17, 2001) ("Because § 440.30(4)(d) specifically states that '[u]pon considering the merits of the motion, the court may deny it without a hearing' ..., it is a "merits based decision, not a procedural bar."). This Court agrees with the decisions finding that a state court rejection of a CPL §440.10 motion pursuant to CPL §440.30(4)(d) is merit based.

9

suffered from bipolar disorder." Dkt. No. 12-1 at SR 52. He did not submit any medical records or sworn affidavits to the trial court in support of his claims that due to his bipolar disorder and/or medications taken due to the disorder, he could not understand or participate in the plea proceeding. *See id.* at SR51-52. Petitioner submitted HIPPA releases to the state court because he believed the court would undertake to obtain his medical records. The court declined to do so, finding that action "inappropriate." Dkt. No. 12-1 at SR 51; Pet. at 6.

Petitioner now states that he submitted the forms to the trial court to obtain his records because he was incarcerated. Pet. at 6. To the extent petitioner may be claiming he was unable to obtain the records on his own because he is in custody, the record before this Court belies that claim. Petitioner attached to his petition a letter from the Office of Mental Health ("OHM") received by him while he was incarcerated, dated September 30, 2015. Dkt. No. 1-1 at 5, Letter from Social Worker II Mary France to petitioner, dated Sept. 30, 2015. The letter contains a list of medications petitioner was taking in September 2015, and medications prescribed in "March of 2014," two months after his plea but during the same month he was sentenced. *Id.* Petitioner has not explained why he was able to obtain this letter in connection with his federal petition, but could not have obtained it, or other records or evidence, while he was litigating his CPL §440.10 motion. The fact that petitioner was incarcerated does not excuse his burden. CPL §440.30(4)(d).[4]

---

[4] This Court may not consider the September 30, 2015 letter in support of petitioner's claims because the trial court adjudicated the claims on the merits. Review of the trial court's decision is therefore "limited to the record that was before the state court[.]" *Pinholster*, 563 U.S. at 181. The September 30, 2015 letter was not part of the record before the trial court. *Id.* at 186 ("we conclude that the Court of Appeals erred in considering the District Court evidence in its review under § 2254(d)(1)"). It is worth noting the letter does not support petitioner's claim that due to either the diagnosis, the medications, or both, he was incompetent to plead guilty. It simply lists a diagnosis and medications, and the fact that petitioner apparently suffered from bipolar disorder

Moreover, as the trial court ruled, the existing record refutes petitioner's claim that he was incapable of knowingly, intelligently and voluntarily pleading guilty. Dkt. No. 12-1 at SR 52. The court did not make a specific finding that petitioner was competent at the time of his plea, but that finding is implicit on the record and is entitled to AEDPA deference. *Lear v. Poole*, 711 F. Supp. 2d 288, 296 (W.D.N.Y. 2010).

As the trial court found, petitioner was "actively involved in the plea process," intelligently responded to the court's questions about the facts surrounding his crime, and assured the court he was freely and voluntarily pleading guilty. Dkt. No. 12-1 at SR 52, *see* Dkt. No. 12-1 at SR 4-15. Petitioner also assured the court he had "all the time" he needed to consult with his lawyer before entering his plea, and he made no claim at the time of his plea that he was "under the influence of any drug when he entered his guilty plea or that he was impaired in any way." Dkt. No. 12-1 at SR 52; *see* Dkt. No. 12-1 at SR 4-17. Finally, petitioner described his conduct in detail, admitting he intended to burn the victim when he threw the coffee at him, and explained that he "reacted wrong[ly]" to their argument. Dkt. No. 12-1 at SR 11-13. Petitioner's statements made during his plea allocution are entitled to the "strong presumption of verity," *Blackledge,* 431 U.S. at 74, and this Court "may rely on [his] sworn statements and hold him to them." *Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004); *see Mills v. Lempke*, No. 6:14-CV-6133, 2015 WL 1632656 at *5 (W.D.N.Y. Apr. 13, 2015) (stating that a petitioner's statements made during a plea colloquy should not be "lightly disregarded in subsequent collateral proceedings, because '[s]olemn declarations

---

does not alone establish incompetence. *See United States v. Harry*, 548 F. App'x. 690, 692 (2d Cir. 2013) ("We have acknowledged that 'some degree of mental illness cannot be equated with incompetence to stand trial.'") (quoting United *States v. Auen*, 846 F.2d 872, 878 (2d Cir.1988)); *United States v. Rickert*, 685 F.3d 760, 766 (8th Cir. 2012) ("[p]resence of a mental illness does not equate with incompetency.") (citation omitted; alteration in original).

in open court carry a strong presumption of verity.'") (quoting *Blackledge*, 431 U.S. 73-74).

There is also nothing on the record to indicate petitioner was unable to consult with counsel or that counsel had any concerns that petitioner was unable to understand the plea and its consequences. Dkt. No. 12-1 at SR 8; *Godinez*, 509 U.S. at 396. It is worth noting that counsel did not alert the trial court, at the plea or sentencing, that petitioner was incompetent to enter a plea. Counsel's silence "provides substantial evidence of [petitioner's] competence." *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986); *see, e.g., Drope v. Missouri*, 420 U.S. 162, 177 n.13 (1975) ("Although we do not, of course, suggest that courts must accept without question a lawyer's representations concerning the competence of his client, ... an expressed doubt in that regard by one with the closest contact with the defendant ... is unquestionably a factor which should be considered.") (citation and internal quotation marks omitted).

In short, the "transcript of the plea proceedings do not contain the slightest suggestion" that petitioner "was incompetent at the time he took his plea." *Best v. Griffin*, No. 1:15-CV-4073, 2016 WL 4030894 at *3 (S.D.N.Y. Jul. 26, 2016). The trial court's rejection of petitioner's arguments was reasonable, supported by the record, and was not contrary to or an unreasonable application of clearly established Supreme Court precedent. *Parke*, 506 U.S. at 35-36; *Godinez*, 509 U.S. at 396; *Hill*, 474 U.S. at 56.

Finally, petitioner's claim that the People's response to his CPL §440.10 motion was late and should not have been considered by the trial court is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990)); *Savinon v. Mazuca*, No. 1:04-CV-1589, 2005 WL 2548032 at *37 (S.D.N.Y. Oct. 12, 2005) ("[P]rocedural errors in state post-conviction proceedings are not cognizable on federal habeas review.") (alteration in original; citation omitted); *Jones v. Duncan*, 162 F. Supp. 2d 204, 217 (S.D.N.Y. 2001) ("'[F]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.'") (citation omitted; collecting cases).

Based on the foregoing, Ground One of the petition is denied and dismissed.

## C.  GROUND TWO

Petitioner argues in Ground Two of his petition that the state's collection of a second $50.00 DNA sample fee from him was "unconstitutional" and an "extortion of funds" because he provided a DNA sample and paid the fee in November 1999 as a result of a prior arrest. Pet. at 7.

This claim arises solely from state law, and is not cognizable on federal habeas review.[5] *See Estelle*, 502 U.S. at 67-68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Ely v. Lempke*, No. 1:09-CV-5836, 2012 WL 7050432 at *22 (S.D.N.Y. Oct. 18, 2012) (petitioner's claim that mandatory fees were imposed on him in violation of CPL §400.30 was not cognizable because the "claim [was] purely one of state law[.]"); *Hendricks v. Senkowski*, No. 1:92-CV-0320, 1993 WL 33417 at *4 (S.D.N.Y. Feb. 4, 1993) ("Since petitioner is not 'in custody' because of his non-payment, or inability to pay, the mandatory

---

[5] The claim is also without merit. Petitioner was convicted of attempted second degree assault, which constitutes a "felony defined in any chapter of the laws of the state." N.Y. Exec. §995(7). He was, therefore, subject to the DNA surcharge. N.Y. Penal Law §60.35(1)(v). As the trial court found, the fact that petitioner "may have previously provided a DNA sample has no affect on whether the DNA surcharge is payable." Dkt. No. 12-1 at SR 52.

assessment fee, habeas corpus relief is unavailable.") (citing 28 U.S.C. § 2254(a)).

Ground Two is therefore denied and dismissed.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED and DISMISSED;** and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[6] and it is further

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

August 12, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge

---

[6] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).